IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Chester D. Watt, | ) | CASE NO.: 4:25-cv-02676-JD |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| Keisha A. White, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Petitioner Chester D. Watt's Motion for Summary Judgment or, in the Alternative, Motion for Default Judgment (DE 56). Petitioner brings this action under the Hague Convention on the Civil Aspects of International Child Abduction and its implementing statute, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 et seq., seeking the return of his minor child, A.W., to Jamaica.

Respondent Keisha A. White was personally served with process and notice of these proceedings but has failed to file a timely answer or otherwise meaningfully defend this action. While Petitioner alternatively seeks entry of default judgment pursuant to Federal Rule of Civil Procedure 55, the Court finds it appropriate to resolve this matter on the merits. Based on the undisputed evidentiary record, the Court concludes that Petitioner has satisfied his burden under the Hague Convention and ICARA and that summary judgment is warranted.

1

## I. BACKGROUND

A. **Factual Background**[1]

A.W. was born in Kingston, Jamaica, in late 2014. (DE 1-3.) Her Jamaican birth certificate lists Kingston as her place of birth. (DE 1-3.) A Jamaican court-ordered paternity test conducted in 2014 determined that Petitioner Chester D. Watt is A.W.'s biological father. (DE 1 ¶ 21.) Petitioner and Respondent Keisha A. White were never married and were never in a formal relationship. (*Id.* ¶ 23.) Before Respondent removed A.W. from Jamaica, A.W. had never traveled outside of Jamaica. (*Id.* ¶ 22.)

From birth, A.W. resided in Jamaica with Respondent. (*Id.* ¶ 24.) Shortly after A.W.'s birth, Petitioner sought to establish a parental relationship with his daughter and attempted to co-parent with Respondent. (*Id.* ¶ 24.) Despite those efforts, Respondent repeatedly restricted Petitioner's access to A.W. throughout her early childhood. (*Id.* ¶ 24.) Respondent did not permit Petitioner to see A.W. for the first time until she was about two weeks old. During these two years, Respondent rarely allowed contact, even though Petitioner took every opportunity to spend time with his daughter. (*Id.* ¶ 25.)

Between approximately ages two and four, Respondent prevented Petitioner from seeing A.W. altogether. (DE 1 ¶ 26.) During that period, Petitioner made repeated attempts to see his daughter by traveling to Respondent's home, church, and A.W.'s school. (*Id.* ¶ 26.) Respondent did not answer the door at her residence,

---

[1] The following facts are undisputed and supported by the record.

and although Petitioner occasionally spoke with Respondent's mother, he was consistently informed that Respondent was not present. (*Id.* ¶ 26.) The only contact Petitioner maintained was through visits to A.W.'s school, which permitted Petitioner limited access because he is A.W.'s father. (*Id.* ¶ 26.)

In late 2021, Petitioner filed an action in the Jamaican Family Court seeking custody and visitation rights. (*Id.* ¶ 27.) On January 11, 2022, the Jamaican court entered an order affirming Petitioner's parental rights. (DE 1-4.) That order granted Petitioner visitation on alternate weekends. It expressly prohibited either parent from removing A.W. from the jurisdiction of the Jamaican court without the other parent's written consent. (*Id.*) Under that order, Respondent was not permitted to take A.W. out of Jamaica without Petitioner's consent. (*Id.*)

Despite the court order, Respondent continued to interfere with Petitioner's court-ordered visitation. (DE 1 ¶ 28.) Although the Jamaican court authorized Petitioner to pick up A.W. from school for visitation weekends, Respondent frequently failed to send A.W. to school on those days. (*Id.*)

Petitioner continued to seek enforcement of his parental rights. He provided financial support through the court-administered system and relocated his residence to be closer to A.W. (DE 1 ¶ 29.) Over the next sixteen months, Petitioner returned to the Jamaican Family Court on four occasions seeking increasingly specific enforcement orders to address Respondent's continued noncompliance. (*Id.* ¶ 30.) Those efforts culminated in a May 5, 2023, court order specifying the exact time and location at which Petitioner was to pick up A.W. on Fridays. (DE 1-5.)

3

Later in May 2023, Respondent removed A.W. from school and took her to an undisclosed location. (DE 1 ¶ 31.) When Petitioner arrived at the school to exercise his visitation rights, A.W. was no longer there. (*Id.*) Petitioner was not informed of Respondent's actions and reasonably believed that A.W. would be present at school. (*Id.*) Petitioner would not see his daughter again for nearly two years. (*Id.*)

After learning that Respondent had removed A.W., Petitioner reported the matter to Jamaican law enforcement, who searched Respondent's residence and workplace on multiple occasions. (DE 1 ¶ 32.) Petitioner also returned to the Jamaican Family Court to seek enforcement of the custody orders. When Respondent failed to appear, the court issued a warrant for her arrest. (*Id.* ¶ 33.)

The Jamaican Family Court ultimately referred Petitioner to the Jamaican Immigration and Citizenship Agency ("JICA"), which informed him that Respondent had taken A.W. out of Jamaica. (*Id.* ¶ 34.) JICA could not provide information regarding A.W.'s destination. (*Id.*) Respondent's removal of A.W. from Jamaica occurred without Petitioner's consent and in direct violation of the Jamaican court orders prohibiting international travel without authorization. (*Id.* ¶ 34; DE 1-4.)

**B.    Procedural Background**

On March 13, 2025, Petitioner filed a Verified Complaint under the Hague Convention on the Civil Aspects of ICARA, 22 U.S.C. § 9001 *et seq.*, in the United States District Court for the Western District of North Carolina, where Petitioner believed Respondent and the child were then located. (DE 1; DE 3.) The next day, that court granted Petitioner's motion for a temporary restraining order and directed

4

the United States Marshals Service to effect service on Respondent. (DE 6.) Initial service efforts were unsuccessful because Respondent no longer resided at the address provided. (DE 7.)

On March 25, 2025, Petitioner moved to transfer the case to the District of South Carolina after receiving information from the United States Department of State indicating that Respondent was physically present in South Carolina. (DE 8.) The Western District of North Carolina granted the motion on March 31, 2025. (DE 9.)

After the transfer, Petitioner filed an Emergency Application for Ex Parte Temporary Restraining Order and Scheduling of an Expedited Preliminary Injunction Hearing. (DE 15.) On April 15, 2025, this Court ordered the United States Marshals Service to expedite service on Respondent of the Verified Complaint, the emergency motion, a summons, and notice of a preliminary injunction hearing scheduled for April 25, 2025. (DE 19.) Personal service was ultimately accomplished on April 17, 2025. (DE 32.)

Respondent did not appear at the April 25, 2025, hearing, despite having been served with notice. (DE 19; DE 32.) Following the unopposed hearing, the Court granted Petitioner's request for a preliminary injunction, finding that Petitioner satisfied each requirement for injunctive relief and demonstrated a likelihood of success on the merits of his Hague Convention claim. (DE 34.)

Respondent was required to file a responsive pleading by May 8, 2025. She failed to do so. (DE 40-1.) After the deadline passed, Petitioner requested entry of default. (DE 40.) The Clerk entered default on June 2, 2025. (DE 43.)

On June 3, 2025, Respondent filed an untimely, unsworn document that was docketed as an "Answer." (DE 44.) The filing does not comply with the Federal Rules of Civil Procedure, is unsupported by admissible evidence, and does not assert any cognizable defense under the Hague Convention.[2]

The Court appointed counsel for Respondent. (DE 50.) Appointed counsel later moved to withdraw, explaining that despite extensive efforts, counsel was unable to communicate with Respondent or obtain direction necessary to continue representation. (DE 55.) The Court granted the motion. (DE 59.) Throughout this action, Petitioner has made repeated and documented efforts to locate, serve, and communicate with Respondent, without success. (DE 19; DE 36; DE 39; DE 54.)

Petitioner thereafter filed the present Motion for Summary Judgment or, in the Alternative, Motion for Default Judgment. (DE 56.) Respondent has not responded. The evidentiary record is, therefore, undisputed.

---

[2] Although the letter contains numerous allegations concerning the child's best interests and Petitioner's character, it does not meaningfully dispute the material facts relevant to a Hague Convention claim, nor does it assert or support any cognizable defense under Articles 12, 13, or 20 of the Convention. Accordingly, the filing does not create a genuine dispute of material fact.

## II.　　LEGAL STANDARD

### A.　　The Hague Convention

The Hague Convention on the Civil Aspects of International Child Abduction is intended to protect "children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009); *see Monasky v. Taglieri*, 589 U.S. 68, 71 (2020) (explaining that the Convention addresses international child abductions arising from domestic disputes). Consistent with that purpose, the Convention "requires the prompt return of a child wrongfully removed or retained away from the country in which [that child] habitually resides." *Monasky*, 589 U.S. at 72.

Proceedings under the Hague Convention do not adjudicate the merits of an underlying custody dispute. Rather, the Convention's return remedy is designed to restore the status quo ante and to ensure that custody determinations are made by the courts of the child's habitual residence. *See Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).

The Convention is implemented in the United States through ICARA, 22 U.S.C. § 9001 *et seq.* Under ICARA, a petitioner seeking the return of a child must establish by a preponderance of the evidence that the child was wrongfully removed or retained under Article 3 of the Convention. 22 U.S.C. § 9003(e)(1)(A). Once wrongful removal is shown, return of the child is mandatory unless the respondent proves one of the Convention's narrow defenses. *Id.* § 9003(e)(2).

### B.　　Rule 56

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[] . . . ." *Id.* at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting another source). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 659–60.

### III.  DISCUSSION

Respondent was personally served with the Verified Complaint and notice of these proceedings, given a chance to be heard, and appointed counsel, yet failed to submit admissible evidence opposing Petitioner's motion. Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, as here, a properly served nonmoving party fails to file a timely responsive pleading or otherwise submit admissible evidence addressing the movant's factual assertions, Rule 56(e) permits the Court to consider those facts undisputed for purposes of the motion and to grant summary judgment if the record supports such relief. Fed. R. Civ. P. 56(e)(2)–(3).

Accordingly, the material facts outlined in the Verified Complaint and supporting exhibits are undisputed, and the Court proceeds to determine whether those undisputed facts establish Petitioner's entitlement to relief under the Hague Convention and ICARA.

### A.  Legal Framework Under the Hague Convention and ICARA

The Hague Convention on the Civil Aspects of International Child Abduction, as implemented by ICARA, seeks to secure the prompt return of children wrongfully removed from their country of habitual residence and to deter international forum-shopping in custody disputes. 22 U.S.C. § 9001(a); *Monasky v. Taglieri*, 589 U.S. 68, 72–73 (2020).

Under ICARA, a petitioner seeking the return of a child must establish by a preponderance of the evidence that the child was "wrongfully removed or retained" under Article 3 of the Convention. 22 U.S.C. § 9003(e)(1)(A). A removal is wrongful if:

1. the child was habitually resident in the petitioner's country of residence immediately before the removal;
2. the removal breached the petitioner's rights of custody under the law of that country; and
3. the petitioner was exercising those custody rights at the time of removal.

*Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007); *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).

Once wrongful removal is established, return of the child is mandatory unless the respondent proves one of the Convention's narrow defenses. 22 U.S.C. § 9003(e)(2); *Miller v. Miller*, 240 F.3d at 398.

**B.    A.W.'s Habitual Residence Was Jamaica**

A child's habitual residence is determined by examining the totality of the circumstances specific to the case, including the child's acclimatization and the settled purpose of the caregiving environment. *See Monasky v. Taglieri*, 589 U.S. at 726–27. No single factor is dispositive, and courts apply a fact-driven, common-sense inquiry.

Here, the undisputed facts establish that Jamaica was A.W.'s habitual residence immediately before her removal. A.W. was born in Kingston, Jamaica, lived there continuously from birth, attended school there, and had never traveled outside Jamaica before Respondent removed her from the country. (DE 1 ¶¶ 21–24; DE 1-3.) All of A.W.'s familial, social, and educational ties were centered in Jamaica.

11

Respondent's unilateral removal of A.W. from Jamaica cannot create a new habitual residence. *Miller v. Miller*, 240 F.3d at 400 ("A parent cannot create a new habitual residence by wrongfully removing and sequestering a child."). On this undisputed record, Jamaica was A.W.'s habitual residence under Article 3 of the Convention.

## C. The Removal Breached Petitioner's Rights of Custody Under Jamaican Law

Article 3 of the Convention requires that the removal breach the petitioner's rights of custody under the law of the child's habitual residence. Those rights may arise by operation of law or by judicial order. Hague Convention art. 3.

The undisputed record demonstrates that Petitioner possessed rights of custody under Jamaican law. In January 2022, the Jamaican Family Court entered an order affirming Petitioner's parental rights, granting him regular visitation, and expressly prohibiting either parent from removing A.W. from the court's jurisdiction without the written consent of the other. (DE 1-4.) A subsequent May 5, 2023, order further specified the time and place for Petitioner's exercise of visitation. (DE 1-5.)

Respondent removed A.W. from Jamaica without Petitioner's consent and in direct violation of these court orders. (DE 1 ¶¶ 31–34.) Such conduct constitutes a breach of custody rights under Article 3. *Bader v. Kramer*, 484 F.3d at 671.

## D. Petitioner Was Exercising His Custody Rights at the Time of Removal

The Fourth Circuit construes the "exercise" requirement broadly. A petitioner is deemed to be exercising custody rights whenever he keeps, or seeks to keep, regular

contact with the child, absent clear evidence of abandonment. *Bader v. Kramer*, 484 F.3d at 671–72.

Here, the record reflects that Petitioner consistently sought to exercise his parental rights. He pursued custody proceedings in the Jamaican court, complied with support obligations, relocated his residence to be closer to A.W., and repeatedly attempted to enforce court-ordered visitation—returning to court multiple times to address Respondent's noncompliance. (DE 1 ¶¶ 27–30.)

These undisputed facts establish that Petitioner was exercising his custody rights at the time Respondent removed A.W. from Jamaica. *See Miller v. Miller*, 240 F.3d at 399–400.

### E.  No Hague Convention Defense Applies

Because Petitioner has established by a preponderance of the evidence that A.W. was wrongfully removed from her habitual residence, the Hague Convention mandates her prompt return unless Respondent carries her burden of proving the applicability of a specific, enumerated defense. 22 U.S.C. § 9003(e)(2). The Convention's defenses are "narrow" and must be construed restrictively to avoid undermining the Convention's core objective of restoring the pre-abduction status quo and deterring international forum-shopping in custody disputes. *Miller v. Miller*, 240 F.3d at 398–400; *Bader v. Kramer*, 484 F.3d at 668–69.

ICARA expressly allocates the burden of proof to the respondent opposing return and requires clear and convincing evidence for defenses under Articles 13(b) and 20, and proof by a preponderance of the evidence for defenses under Articles 12

13

and 13(a). 22 U.S.C. § 9003(e)(2). Here, Respondent has neither properly asserted nor supported with admissible evidence any defense recognized by the Convention. She has presented no evidence that A.W. is "well settled" under Article 12, that Petitioner consented to or acquiesced in the removal under Article 13(a), that return would expose the child to a grave risk of physical or psychological harm under Article 13(b), or that return would violate fundamental principles of human rights under Article 20.

Although Respondent's untimely correspondence makes generalized references to the child's best interests and to alleged misconduct by Petitioner, such assertions are legally insufficient. The Hague Convention does not authorize courts to adjudicate the merits of underlying custody disputes or to engage in a free-ranging best-interests analysis. *See* 22 U.S.C. § 9001(b)(4); *Monasky v. Taglieri*, 589 U.S. at 76–78. Unsupported allegations, particularly those not presented through competent evidence, cannot satisfy Respondent's statutory burden or create a genuine dispute of material fact sufficient to forestall summary disposition.

Accordingly, because Respondent has failed to establish any defense under Articles 12, 13, or 20 of the Convention, no exception precludes A.W.'s return to her country of habitual residence, and the Convention's mandatory return remedy applies.

## F.    Summary Judgment Is Warranted

The Hague Convention provides a merits-based remedy designed to restore the status quo and return custody determinations to the child's habitual residence. *Smedley v. Smedley*, 772 F.3d 184, 186–87 (4th Cir. 2014).

Based on the undisputed record, Petitioner has satisfied his burden under Article 3 of the Convention and ICARA § 9003(e). No defense applies. Summary judgment is, therefore, appropriate.

## IV.    CONCLUSION

For these reasons, the Court concludes that there is no genuine dispute of material fact, and Petitioner has established by a preponderance of the evidence that A.W. was wrongfully removed from her country of habitual residence, Jamaica, under Article 3 of the Hague Convention and 22 U.S.C. § 9003(e). Respondent has failed to establish the applicability of any defense under the Hague Convention.

Accordingly, Petitioner's Motion for Summary Judgment (DE 56) is GRANTED. Respondent is hereby ORDERED to return A.W. to Jamaica forthwith, in accordance with the Hague Convention and ICARA. The return of the child shall be carried out promptly and in a manner consistent with this Order and any reasonable logistical arrangements directed by the Court to ensure the child's safe return.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Respondent at her last known address of record. In addition, in light of the history of service difficulties in this matter, the United States Marshals Service is **DIRECTED**, if

practicable, to effect service of this Order on Respondent and to file a return of service.[3]

Because the Court grants relief on the merits under Rule 56, Petitioner's alternative request for entry of default judgment pursuant to Federal Rule of Civil Procedure 55 is **DENIED AS MOOT**.

Furthermore, in light of the Court's disposition of this matter on the merits, Petitioner's Motion to Enter Scheduling Order (DE 45) is **DENIED AS MOOT**.

The Court retains jurisdiction to issue any further orders necessary to implement and enforce this Order and to address ancillary matters authorized by ICARA, including issues related to the logistics of return.

IT IS SO ORDERED.


Florence, South Carolina
January 15, 2026

Joseph Dawson, III
United States District Judge

---

[3] The Court directs additional service of this Order in light of the history of service difficulties in this matter, Respondent's limited participation following personal service, and the Hague Convention's emphasis on the prompt and effective implementation of return orders. See Hague Convention art. 11; 22 U.S.C. § 9001(a)(4). This directive is intended solely to ensure notice and facilitate compliance and does not reflect any finding regarding Respondent's future conduct.